EKSTROM–CARLSON & CO., Plaintiff,

v.

ONSRUD MACHINE WORKS, INC., Defendant.

No. 56 C 2064.

United States District Court
N. D. Illinois, E. D.

May 31, 1961.

452

Wolfe, Hubbard, Voit & Osann, Jarrett Ross Clark, Edward B. Holt, Richard Russell Wolfe, Chicago, Ill., for plaintiff.

Charles W. Rummler, W. A. Snow, Chicago, Ill., for defendant.

PERRY, District Judge.

### Findings of Fact

1. This is an action in which plaintiff, Ekstrom-Carlson & Co., an Illinois corporation, alleges that defendant, Onsrud Machine Works, Inc., an Illinois corporation, has infringed claims 16, 17, 18 and 20 of United States Letters Patent No. 2,723,598, issued November 15, 1955, on application of Theodore C. Mann, and owned by plaintiff.

2. This Court has jurisdiction of the parties and of the subject matter.

3. The Mann patent in suit relates to a power actuated double-arm router. Both plaintiff and defendant manufacture and sell among other items machine tools of this type, this being also known as articulated or broken-arm router.

4. In general, a router is a machine capable of following an irregular pattern and usually is employed for cutting wood and nonferrous metals. In the case of a double-arm router, the tool is supported by two horizontal arms, one of which is pivoted at one end to a pedestal to swing horizontally about a vertical axis and the other of which is pivoted to the outer end of the first arm to swing horizontally relative to the latter about a parallel axis, much like the forearm and upper arm hinged at the elbow and shoulder. The cutting tool is carried at the free end of the second or outer arm and is power rotated about a third vertical axis. Coaxial with the tool is a circular follower which is designed to engage the edge of a template usually secured to the top of the workpiece. By moving the follower along the periphery of the template, the tool cuts the workpiece to the shape of the template. Heavy duty routers of this type have been made by defendant since 1940 and by plaintiff since 1941 or 1942. Originally, movement of the follower and tool around the template, as permitted by the free swing of the arms, was effected manually by the person pushing and pulling on the tool end of the outer arm.

5. For over sixteen years before Mann made the machine of the patent in suit, the aircraft industry and others sought to obtain power actuated routers. Although other types of routers were developed for power actuation, power actuation of the double-arm router remained an unrealized goal. The need in the aircraft industry became urgent in the middle 1940s. The giants of the aircraft industry repeatedly called upon their suppliers to furnish a machine and even devoted their own engineering talent to the project. Yet, prior to Mann, all of these efforts were unsuccessful.

6. When Mann was presented with the problem in early 1951, he conceived the idea of applying power individually to each of the arms of the router by separate power actuators controlled by a single handle, the actuators serving both to hold the follower against the template and to feed the tool through the work. He was the first to recognize that the two actuators would produce a resultant force at the end which would simulate the force that had been applied manually and that the resultant force would accurately hold the follower against the template while advancing the tool.

7. Almost immediately, North American Aviation paid tribute to Mann's conception by awarding plaintiff a purchase order for a double-arm router powered according to Mann's idea. Working continuously from early 1951, plaintiff

had built and successfully tested the router by late summer of that year.

8. As originally built, plaintiff's router conformed in all material respects with the preferred embodiment disclosed in the patent in suit. Subsequently, before shipment in 1952 improvements were made, most noticeable of which was the removal of the control from the head of the router to a remote station, and also an all-electric version of the router was designed. Both the hydraulic and electric routers as manufactured and sold commercially by plaintiff respond to the terms of one or more claims of the patent in suit.

9. At the time plaintiff produced its first power actuated double-arm router, there was no comparable machine in existence nor was there any machine even approaching plaintiff's. Plaintiff sold its hydraulic machines for approximately $35,000 and its electric machines for $45,000, that being about one-eighth of the price of machines concurrently designed to do the same job. Its total business in these machines approaches three-quarters of a million dollars.

10. Not until after plaintiff had built its machine did anyone else successfully construct a power operated double-arm router. All attempts made prior to or concurrently with Mann's endeavor failed. Indeed, Lockheed Aircraft Corporation devoted an entire development project to the design and construction of such a router and, after a year's effort, abandoned the project without success.

11. Not one of defendant's many pieces of prior art matches plaintiff's router. In fact, only one (Smith, No. 2,693,737) even discloses a power operated double-arm router, and it has not been established that that antedates Mann's invention. Claims 16, 17, 18 and 20 of the patent in suit define a new combination.

12. The molding machines, or so-called "Sandslingers," relied on by defendant as prior art, are ineffective to suggest the application of power to a double-arm router. They were simply high speed devices for throwing wads of molding sand into selected places in a molding flask. They were neither intended nor capable of being used with a template. The care with which the sand is rammed into flasks by such machines is an entirely different matter than the precision measured in thousandths of an inch required for a machine tool. Although widely publicized and known, the Sandslingers never inspired a development in the router art. They were not, and could not be, used for Mann's purpose.

13. Of the 31 prior art patents and 8 publications offered by defendant, defendant's own expert admitted that Clay, No. 2,339,001 and Taylor, No. 2,069,189 are the most pertinent. Both of these were cited in the file wrapper of the patent in suit and this reassures the Court that the Patent Office was correct in its finding of invention.

14. All material factors bearing on the question of invention were presented fairly to the Patent Office. The file wrapper of the patent in suit contains no deception which might be calculated to mislead the Patent Office to an improper conclusion.

15. The device defined by claims 16, 17, 18 and 20 of the Mann patent in suit are not anticipated or taught by the prior art. The solution of the problem of providing power operation of a double-arm router required more than the ordinary skill of a machine tool designer.

16. In the light of the prior art and general state of the development in the field it is clear that it required invention of the quality demanded by 35 U.S.C. §§ 102, 103 to produce the machine of the patent in suit.

17. Defendant's accused machine was contrived to do the same work as plaintiff's double-arm router. It has all of the same elements which serve precisely the same purpose and which are controlled in substantially the same manner.

454

Defendant's router competes directly with plaintiff's and is the only other power actuated double-arm router in existence.

18. Defendant's router is as different from prior machines as is the machine of the Mann patent in suit. Both employ two pivotally supported arms carrying coaxially mounted tool and follower. Both are designed to cause the follower to move along the periphery of a template so that the tool cuts the desired pattern. Both achieve the movement of the follower through the use of two power actuators, one for turning each arm, with the direction and degree of energization of the actuators selectively controlled by the operator. Defendant even utilizes hydraulic actuators and produces different hydraulic pressures for the two actuators, this being taught by the patent in suit. The two routers employ substantially the same parts to perform the same operation in substantially the same way.

19. Each element recited in claims 16, 17, 18 and 20 of the patent in suit finds complete response in defendant's accused router.

## Conclusions of Law

### I

To be patentable, a device must not only be new and useful, it must also be the product of true "invention". It must be beyond the reasonable expectations of persons of ordinary skill in the art, the routiners of the field. The expectable improvements, the normal evolutionary improvements of devices under the rub of competition do not qualify as patentable inventions.

### II

The fact that competent engineers have been faced with an unsolved problem for an extended period of time is evidence that the eventual solution was beyond the skill of the ordinary designer.

### III

In administering the Patent Law, it is proper for the Court to look to the practical art, the actual success of the patented machine and the degree to which it has been accepted by the purchasing public, and the advantages accruing from its use are to be taken into account in determining patentable invention.

### IV

There is no anticipation by a prior device not known or recognized as being capable of performing the function of the patented device. The prior publication must itself teach. All tools differ from each other only in shapes, sizes and arrangements of their components. And where a particular arrangement of elements in unobvious and has eluded the art for many years, that factor is controlling in determining the presence of invention rather than the extent of the gross physical change.

### V

A patent is presumed to be valid and, where the prior art urged as anticipation was before the Patent Office and was rejected, the presumption of novelty and invention is greatly strengthened.

### VI

The claims of a patent define what the invention is, the limits beyond which one cannot pass. In determining infringement, therefore, resort must be had in the first instance to the words of the claims. Infringement is established if the accused device falls within the terms of the claim and if it does the same work in substantially the same way as the patented device.

### VII

Claims 16, 17, 18 and 20 of Mann Patent No. 2,723,598 are valid and infringed by defendant's manufacture, use and sale of its power actuated double-arm router.